Michael J. GOSHA and Susan D. Gosha, Appellees,

v.

Francis J. WOLLER, Linda D. Woller, and Francis J. Woller d/b/a Woller Construction Company, Appellants.

No. 63003.

Supreme Court of Iowa.

Feb. 20, 1980.

R. N. Russo and Barry A. Lindahl of Conzett, Norman, Lindahl & O'Brien, Dubuque, for appellants.

Michael J. Coyle of Fuerste, Carew, Coyle, Juergens & Sudmeier, Dubuque, for appellees.

Considered by LeGRAND, P. J., and REES, UHLENHOPP, ALLBEE and LARSON, JJ.

LARSON, Justice.

These defendants appeal from a judgment entered against them in a suit by the buyers of a new home. They contend that the trial court based its decision on a theory not alleged in the pleadings and, in so doing, denied them an opportunity to present a defense to that theory. They request judgment in their favor or, in the alternative, reversal and remand for a new trial. We reverse the judgment of the trial court and remand the case with instructions.

The defendant Woller Construction Company began constructing a home with the intent of selling it. Shortly before completion, defendants Francis J. Woller and Linda D. Woller sold the house to the plaintiffs. Construction was completed before the buyers took possession.

The court found that several problems appeared in the home soon after the buyers moved in. These included a large crack in the garage floor, water leaks in the basement, frost heaving of the front stoop and garage floor and cracked interior walls. There was water damage in the basement, the water pipes in the garage ceiling froze twice, and the room above the garage was rendered unusable during the winter months. Unable to obtain satisfaction from their sellers, the new owners undertook to make repairs themselves. The defendants on appeal do not contest these findings of fact.

Suit was filed against the contractor-vendors alleging they

> breached . . . *oral and written warranties* to Plaintiffs in that adequate steps were not taken by the builder to rid the building site of either surface water or sub-surface water [and] adequate steps were not taken to prevent frost damage and cracking of concrete in the construction.
>
> . . . As a direct and proximate result *of the aforesaid breaches* by Defendants [, the Plaintiffs suffered damage]. [Emphasis added.]

The petition was thus limited to express warranties, "oral and written," and was never amended to allege other bases for liability. Despite the fact plaintiffs' attorney consistently elicited testimony from his own expert witness about proper construction practice, testimony relevant to implied warranties, he never mentioned any theory of recovery other than the breach of the express warranties.

During trial, defense counsel attempted to restrict plaintiffs' proof to express warranties, particularly whether the building was constructed in accordance with the written specifications. Typical of his objections is the following:

> [A]gain we renew our objection to this line of inquiry [. T]he witness is limited to expressing an opinion as to what is called for in the plans and specifications [and] not what this witness thinks should

or should not be in [good] construction [practice].

These objections were overruled.

The trial court, in its findings of fact, stated that "[p]laintiffs had no discussion with defendant prior to the purchase and there were no oral or written agreements or representations by defendants to plaintiffs regarding the quality or construction of the home." In its conclusions of law, therefore, the court determined that "[d]efendant did not breach any written or oral representations as to the quality or construction of the home *and plaintiffs are not entitled to recover on any such breach.*" (Emphasis added.) Judgment was then entered for plaintiffs on another theory—that of implied warranty of habitability. Therefore, despite the fact that express warranty was the only theory pled by the plaintiffs and the trial court found no evidence to support it, judgment was nonetheless entered for the plaintiffs. The court reasoned that "to deny Plaintiffs recovery because they sought recovery on an express warranty rather than the implied warranty seems too fine a distinction for modern pleading."

Defendants contend that the trial court's adoption of this new theory, when it had not been pled, constituted a fatal variance and denied them a fair trial.

Our Rule of Civil Procedure 106 deals with the problem of variance:

> No variance between pleading and proof shall be deemed material unless it is shown to have misled the opposite party to his prejudice in maintaining his cause of action or defense. But where an allegation or defense is unproved in its general meaning, this shall not be held a mere variance but a failure of proof.

We conclude there was a variance in this case between the allegations of the petition and the legal basis relied upon by the court in granting plaintiffs' recovery. Under our rule, we must determine whether the variance was so substantial as to mislead the defendants and to prejudice them in the preparation of their response to the allegations.

It is true that this court has expressed a reluctance to reverse on the basis of vari-

ance.[1] Other alternatives, including a continuance to allow preparation to meet the new theory,[2] would be appropriate in some cases. Here, though, defendants had no reason to suspect they might be "blind-sided" by a new theory; they had no indication prior to the court's ruling that a legal theory not pled would provide the basis for plaintiffs' recovery. An amendment by plaintiffs, even if just to conform to the proof, would have given them some notion of the legal theory to be met by them.

In addition, it is not disputed that the theory adopted by the court was new to Iowa.[3] This factor bears on the issue of whether defendants should reasonably have anticipated its insertion into the trial and also bears on the appellees' contention that we should disregard the specific legal theories asserted and look to the facts pled, much as in a ruling on a motion to dismiss. We do not find it reasonable, however, to charge these defendants with fair and adequate notice that a legal theory might be in the case when that theory was not even a part of our established law.

■ This court has held that where pleadings allege an implied contract and the proof establishes an express contract, or vice versa, the result is a fatal variance. *See, e. g., Waymann v. City of Cherokee,* 208 Iowa 905, 225 N.W. 950 (1929) (claim under quantum meruit; proof of express contract). We recognize that this case reflected the state of our law before the advent of "notice pleading," and appellees contend that to find a fatal variance here would violate the spirit and intent of that new concept. However, even under Rule of Civil Procedure 69, which no longer contains the rigid requirement that a specific "cause of action" be pleaded, a "simple, concise, and direct" averment is required. R.Civ.P. 69(b). Moreover, notice pleading requires a "fair notice of the claim asserted to allow that party to make an adequate response."[4]

■ Under the circumstances of this case, defendants were not given notice of the theory relied upon sufficient to allow them to make an adequate response. We therefore must set aside the judgment of the trial court. There is authority for reversal with an order for judgment for the defendants under similar circumstances. In *Ross v. Miller,* 254 Iowa 1364, 1369-70, 121 N.W.2d 124, 127 (1963), the plaintiff sued on one contract and claimed performance under it. The court, in a jury-waived action, found an entirely different contract and rendered judgment under it. In concluding there was more than "a mere variance" but a "fail[ure] for lack of proof" the court pointed out that "[t]he case was not tried on the theory [devised by the court] . . . He stood on the record as made. There was no attempt to amend to conform to the proof." In *Ross* the appeal resulted in a reversal with instructions to enter judgment for the defendant.

Such a disposition would be harsh under the circumstances here because it would unduly punish the plaintiffs for their ex-

1. *See* discussion in 2 A. D. Vestal and P. Willson, *Iowa Practice* § 34.22, at 58–60 (1974).

2. *Id.* at 56.

3. Although the concept has been increasing in its acceptance, *see,* Annot. 25 A.L.R.3d 383 (1969 & Supp.1979), this court has not yet recognized an implied warranty of habitability in the sale of a new home. We have recognized that such a warranty accompanies the creation of a residential leasehold. *Mease v. Fox,* 200 N.W.2d 791 (Iowa 1972). Also, in a construction contract—where the future homeowners contract with a builder before the construction of a dwelling—we have held "it is implied, unless there is express contrary agreement, that 'the building will be erected in a reasonably good and workmanlike manner and will be reasonably fit for the intended purpose.'" *Busker v. Sokolowski,* 203 N.W.2d 301, 303 (Iowa 1972) (quoting *Markman v. Hoefer,* 252 Iowa 118, 123, 106 N.W.2d 59, 62 (1960)).

4. 1 Vestal & Willson, *supra* note 1, § 1301, at 56–57 (Supp.1977). *See also United States v. Metro Development Corp.,* 61 F.R.D. 83, 86 (1973) (purpose of notice pleading "to give the adverse party fair notice of the claim asserted in the form of a generalized summary sufficient to allow that party to make an adequate response"). For recent discussion of Iowa's notice pleading *see Christensen v. Shelby County,* 287 N.W.2d 560, 563 (Iowa 1979).

press specificity in their pleading, contrary to the spirit and intent of notice pleading. Plaintiffs' failure to amend their pleadings to conform to this theory, moreover, cannot be attributed to a conscious election on their part to stand on a record limited to breach of express warranty because the trial court over defendants' objections consistently admitted opinion evidence relevant on the issue of implied warranty. In other words, although their petition was limited to the theory of express warranty the evidence was not. What the trial court did, in effect, was to amend to conform to the proof on its own motion, without application or hearing. For these reasons, this case is distinguishable from *Ross v. Miller* and warrants a different disposition.

 Allowance of leave to amend to conform to the proof is largely in the discretion of the trial court. *B & B Asphalt Co. Inc. v. T. S. McShane Company, Inc.*, 242 N.W.2d 279, 283–84 (Iowa 1976). The trial court here should be permitted to exercise that discretion, but only upon application and opportunity to resist. This case should be reversed and remanded to permit the plaintiffs, if desired, to move to amend to conform to the proof and to allow defendants the opportunity to resist and thereafter offer evidence in response to it if leave is granted. If plaintiffs fail to so move within sixty days, the trial court shall enter judgment for the defendants.

REVERSED AND REMANDED WITH INSTRUCTIONS.

All Justices concur except LeGRAND, J., who dissents.

LeGRAND, Justice (dissenting).

Although I agree this case must be reversed, I disagree with the majority in its decision to remand for a new trial. I would, instead, dismiss plaintiffs' petition.

The case was fully tried, and successfully defended, on plaintiffs' own pleaded theory. Now the majority, while conceding plaintiffs failed to prove *that* claim, says they should have a second opportunity to prove a *different* one.

To me this is indeed a strange result. Ordinarily the parties choose the issues. Courts then try cases on those issues. Any other rule will surely lead to judicial chaos.

In the present case plaintiffs chose—wrongly—how they wanted to try their claim. It was apparent throughout the trial that defendants were challenging their choice of remedy. Yet at no time did plaintiffs seek to amend to assert the theory this court now says they should have pursued. Plaintiffs simply elected not to go that route.

Furthermore the majority's apparent reliance on notice pleading seems to me to be misplaced. Pleading *precedes*, not *follows*, trial and judgment. This court should not give posthumous effect to notice pleading by applying it after the case is over when it was not resorted to while the case was alive. Plaintiffs forfeited their right to rely on notice pleading by setting out the specific basis of their claim. They should be held to their failure of proof.